Good morning, Your Honors. May it please the Court, Devin Goodman for Mr. Tackett, along with Zachary Soled. I am the student co-counsel from the UC Law SF Appellate Project. I'll watch my time, and I intend to reserve five minutes for rebuttal. This appeal centers on Mr. Tackett's medical malpractice claims concerning his late wife's premature and preventable death. Mr. Tackett, acting pro se, brought federal and state law claims against the Montana medical providers and the Washington health care providers that were responsible for his wife's care. Today, Mr. Tackett is appealing only two errors, both strictly with respect to the Washington defendants and the Washington claims. First, on personal jurisdiction, the district court did not accept Mr. Tackett's uncontroverted showing of jurisdictional facts, as it must on a 12b-2. And alternatively, on transfer, the court outright dismissed Mr. Tackett's claims, his Washington state claims, without considering transfer at all. And this is despite Mr. Tackett's express request on the record for transfer. Here, not exercising discretion was a per se abuse of that discretion. I'll begin with the personal jurisdiction issue. In a minimum contacts analysis, we ask three questions. Are the contacts sufficient to establish personal jurisdiction? Do the claims arise out of or relate to those contacts? And finally, is it fair to exercise jurisdiction over the defendant? So are you challenging Dr. Chaginor also, or are we just talking about the Providence, Washington? Your Honor, we're challenging the decision with respect to Dr. Chaginor solely so that if on remand, if the court does decide to remand, that she be included for a transfer. Okay. However, the record doesn't necessarily contain facts. So you don't think she's subject to personal jurisdiction in Montana? It would require jurisdictional discovery. The record currently does not reflect, yes. Okay. But is there any basis for jurisdictional discovery as to her? As to the doctor? No. No, Your Honor. Okay. Moving to the minimum contacts analysis, the answer to all three of the questions for this test is yes. Providence has formed ongoing contacts with Montana's health care network by facilitating transfers from smaller Montana hospitals. And Mrs. Tackett's transfer occurred here because of those contacts. Can you address the long-arm Montana long-arm statute first? Yes, Your Honor. The long-arm jurisdiction is a legal question, and the district court did have a duty to apply the correct law. Mr. Tackett was representing himself pro se, and the court in its order cited Threlkeld v. Colorado, which was a Supreme Court of Montana case that analyzed malpractice claims in both the — against a nonresident service provider in both the accrual of a tort provision and the business transaction provision context, especially because Mr. Tackett's pleadings were so heavily focused on the ongoing relationship between Providence and Cabinet Peaks. The district court had everything it needed to evaluate the claims under the business transactions provision, but instead it accepted Providence's unsupported characterization of the relationship as a one-off, emergency-only transfer, and therefore only evaluated under the transaction or under the accrual of a tort provision. It was a difficult decision for the district court to make, especially because of the pro se briefing. But Mr. Tackett did point to the Montana long-arm statute generally when he was discussing Providence's relationship with Cabinet Peaks. And given that the court also cited Threlkeld, the district court's decision was understandable, but it does merit reversal or at least a remand to evaluate under the correct jurisdictional provision. But what — how did they — I mean, they got involved because people in Montana contacted them, right, about your client's wife? Specifically with respect to Mrs. Tackett, yes, Cabinet Peaks reached out to Providence. However, what's important here is that Providence — the evidence that Mr. Tackett has put before the district court showed that Providence has built an infrastructure that facilitates transfers from Montana to — to Providence, specifically its Spokane location. This is the transfer center theory that he articulated, and Your Honors will see on record page 118, that there is a record between — from the Cabinet Peaks' communications with Providence showing the — how this transfer center operates to reach into Montana, to provide care to Montana patients, and then ultimately to transfer them to Providence when the patient might require care that is too intricate or too difficult for that smaller location. How does this differ from Threlkeld? This differs from Threlkeld specifically because in that case it involved a veterinary malpractice action, that the — there was no established relationship or established infrastructure that reached into Montana to facilitate, in that case horse owners, to seek veterinary care at the Colorado service provider, whereas in this case we see that — specifically in record page 118, again, that Providence has created a record transfer center where its own doctors provide medical care to — or provide medical advice to out-of-state patients. Did the court make a distinction between the individual hospital charged alleged to have been involved in the negligent act and the hospital system? Not necessarily, Your Honor, because looking to Ford for guidance from the Supreme Court recently, we're looking for affiliated contacts between the Providence and its association with Montana's healthcare network. And here this court can look at the entirety of that relationship. However, if that's insufficient, Mrs. Tackett's relationship — or Mrs. Tackett's transfer does fulfill that requirement, because as this court recently stated in Impossible Foods, one contact is sufficient to make a distinction with respect to claims. Mr. Tackett had five opportunities to plead. Looking for discovery at this point and another opportunity? Well, Mr. Tackett was never granted discovery at the district court level, so he was never able to obtain the full — he was never able to show the court the full scope of the case. The district court never specifically articulated that — what Mr. Tackett needed to do to satisfy the long-arm statute or the sufficient minimum contacts. And it was only the defense who articulated that — what perhaps was missing. And Mr. Tackett, of course, is not required to follow that. The common thread, at least to me, in the Montana long-arm statute cases of what is repeatedly referred to in Threadkill, Nelson, and Grizzly and all these other cases, is that there — was there a contract between the parties or shipping products to the person? What's the closest thing you have here to transacting businesses and contracts or shipping products, et cetera? Looking specifically at Nelson, what's most important in this relationship is the — there's — for example, in Nelson, we're not just looking at a contract. It's not necessary that a contract exists. It's necessary that a contractual-like relationship exists between the two. There very well may be a contract between Providence and Cabinet Peaks, and that would be something that could come out in jurisdictional discovery. However, the infrastructure that Providence has established mirrors, in cases like Nelson, in cases like Grizzly, the multifaceted relationship that an out-of-state business might have with the in-state business, including negotiating contracts and shipping products into state and not just entering contracts. And when you say infrastructure, what do you mean specifically by infrastructure? Specifically the transfer center that Providence has created to facilitate transfers from Montana down to Washington. That's the process by which Cabinet Peaks reached out to Providence, and they got a Providence doctor who took over in terms of assigning Mrs. Tackett's care. And ultimately — there's a quote in the record on page 118 — that Mrs. Tackett was improving following Providence's recommendations, but Providence, quote, did not want to delay transfer, even though Cabinet Peaks suggested that she might benefit from further testing there. So this is really Providence's mechanism to reach into and find smaller Montana hospitals and benefit from transferring those patients down to its own facilities. And I'd like to briefly touch on transfer, if Your Honor has no further questions on personal jurisdiction. When facing any jurisdictional defect, district courts have a duty to consider transferring claims, and there is another court that is available for the claims instead of outright dismissal. And then if it is in the interest of justice, the court must transfer. Here, the district court abused its discretion by failing to consider transfer at all, and the record does reflect that transfer was in the interest of justice. In almost all cases, remedy for filing suit in the wrong court is transfer to the right court. So this court regularly remands with orders to transfer without further review of the issue. And this is especially true when all facts regarding the interest of transfer are in plain view on the record. Here, Mr. Tackett requested transfer on record page 113. Providence addressed this request on record page 106. And, however, the Court's order did not address transfer at all. This Court, as stated in Miller, simply can't know whether the district court actually considered the relevant interest of justice factors if it does not say anything on the record. Congress created 1631 to preserve claims exactly like Mr. Tackett's. For example, in Goldlauer v. Hyman, the Supreme Court explained that an interest of justice transfer primarily functions to avoid penalizing plaintiffs. So under our — if we — hypothetically, if we disagree with you on the personal jurisdiction but agree with you on the transfer piece, under our cases, what's the right remedy, that we would send it back to the district court to have the district court decide whether to transfer or just to order transfer? The latter, Your Honor. This Court has many examples, including Taylor v. Social because the interests of justice are clear on the record. And here, Mr. Tackett was not filing in bad faith. He had colorable medical malpractice claims. He had every reason to believe that he could have filed in Montana, given his personal jurisdiction argument. And it's, therefore, not against the interest of justice to transfer. I'll remind this Court, it is rare that a case will not — a transfer will not be in the interest of justice. It's simply too severe a penalty for filing in the wrong court. And if Your Honors have no further questions, I'll reserve the remainder of my time. I have a question about your reply brief. You suggested that if the case is remanded to the district court, the district court should reconsider whether to reassert jurisdiction over the Montana defendants. Is that right? Yes, Your Honor. Explain how that would happen. There's a state action pending in Montana against the other hospital, the Montana hospital. So how would the district court get that case back? We're simply asking — Mr. Tackett's simply asking that the district court evaluate how far along the case has gone at the state level, whether it has gone too far to recall jurisdiction. Because he intended for the claims and the defendants to all be consolidated together, and the only reason that the district court dismissed the Montana defendants was because it had already dismissed all the other claims. Had it — if this Court finds that there was personal jurisdiction in Montana, or perhaps that the court should further investigate that, then that dismissal of the Montana claims would come under a different analysis, and the court would have to reevaluate there. Now, the district court is in the best position to see whether that case perhaps has gone too far, and that's something that the district court — that's a decision the district court should make. But it would be fundamentally unfair for the Montana defendants to be able to benefit from an erroneous determination in that way. Thank you, Your Honors. Thank you. Good morning, and I'm Gary Kalkstein with Hal Booth Smith, and I have the pleasure of representing, in this case, the appellees, Providence Washington, as I referred to them in briefs, and Kavitha Shagener, who is a physician practicing in Spokane, Washington. We very much appreciate the opportunity to present our case to you, and it's our belief that the district court order dismissing this action against Providence Washington and Dr. Shagener was correct and should be affirmed. The district court's conclusion that it lacked personal jurisdiction over Providence and Dr. Shagener was correct for reasons I will briefly go into, and the district court had no obligation to consider whether this case was transferable, given the fact that in order to get to that question, it would have to engage in severance of the case into component parts, and then there is simply no obligation in that situation to require transfer of such a situation. But the district court would have had discretion to do so, right? Yes, sir. It's our position that it would be permissive but not mandated. But there's nothing in the record that shows that the district court considered that. That's correct, Your Honor. Why shouldn't we? And this isn't to slight the district court judge. They're busy. I know from Judge Kain, the district court's incredibly busy, so it's not slighting against the district court judge, but it seems like the court may have just missed this issue that the plaintiffs raised that didn't consider it. Why shouldn't we send it back and ask the district court to consider it? Maybe the district court will ultimately say, no, I'm not going to sever the claims, but why shouldn't we bring it back? It's our belief, Your Honor, that the relevant case law does not mandate severance into component parts, and then for consideration of transfer that, as Your Honor stated, it's permissive. If I may interrupt, if the district court said, no, I'm not going to sever it, then maybe it's fine. Right. Possibly, but at least — but there's nothing in the record that shows the district court considered it. Maybe the district court was wrong in thinking that it didn't have any discretion to do so. It seems like the safest course is to send it back and let the district court consider it. I would respectfully disagree, Your Honor, because I think that presumes that the district court was not aware of some of the case law that indicates that severance is permissive and that if, at that point, consideration should be given to the possibility of transfer, it's not mandated. It's also permissive, and so I think that would place a higher standard on Judge Morris and the district court than presently exists as to my understanding of relevant case law. We believe that the dispositive questions in this case are whether a court can transfer less than an entire action under Section 1631, and even if a court can do so, which we believe it can, whether the district court was obligated to consider severing or bifurcating Mr. Tackett's claim against Providence Washington and Dr. Shaguner so that they alone could be transferred. In other words, we believe that to resolve this appeal, the overriding issue concerns not whether transferring less than an entire action is permissible, but rather whether it's mandatory and it's something that the court is obligated to do. We're aware of no authority indicating Section 1631 mandates transfer of discrete components of an action, and the Tenth Circuit has stated as such, and we recognize that's not binding on this court, but in Schroeder v. Bittinger, it expressly stated the court was aware of no authority requiring district courts to transfer resulting components under 1631. The pertinent Federal Circuit decisions likewise, we believe, support and lend support to the idea that a district court must consider transferring less than an entire action under 1631. Under U.S. First County of Cook, Illinois, the Federal Circuit Court held that less than an entire action may be transferred under 1631, but it is not obligatory, and it's permissive language that's used throughout the course of that opinion. Did Mr. Tackett ask for severance in the district court? You know, it's our belief and my recollection, Your Honor, that severance was not asked until this process began. He filed a number of different complaints. He changed the tenor of his case with regard to some of the other defendants, but that this was not an issue that was raised and addressed by the lower court. Under Galloway Farms, which is also a Federal Circuit case, bifurcation and partial transfer was noted to be permissive, but noted also to be atypical and not preferable. And we believe the overriding dispositive point that Mr. Tackett can't get around is even if the district court has authority to sever the case against Providence, Washington, and Dr. Shaguner, that transfer of the new action would not be mandated and they're not obligated to consider doing so. And to my knowledge, after reading the briefs in this case, I don't believe that Your Honors have been provided with any authority to the contrary. With regard to personal jurisdiction, that's an interesting issue as has been framed by my friends representing the appellees. And one of the concerns that we have, and I think that this court is aware of, is Montana is a rural state. There are lots of communities that are served by critical access hospitals where people simply don't have access to higher levels of care, and particularly where it involves situations like Ms. Tackett's, and that can be true with stroke, heart attack, serious traumatic injuries. And in this case, the record is clear and undisputed that this contact was made by the folks at Cabinet Peaks Medical Center in Libby, Montana, which was a small mining town in the mountains of northwestern Montana. They initially tried to transfer Ms. Tackett to Kalispell, which is a higher level of care than Cabinet Peaks. And after hearing that Kalispell did not have the capacity to accept Ms. Tackett as a patient, they took it upon themselves to contact Providence, Washington. And Providence, Washington, based on their request to send a patient to a higher level of care, having the capacity to provide that care, accepted. And I would respectfully suggest that if such an acceptance of transfer creates personal jurisdiction and exposes the providers to litigation in the state where transfer is made from, that that would have a chilling effect on the ability of people in rural states such as ours to receive a higher level of care in emergent situations. Are there circumstances where somebody could be operating out of state but essentially have a kind of referral service within the state of Montana that would then qualify as doing the transaction of business within Montana? Not to my knowledge, Your Honor. And what I can tell you is that in my experience, and I'm not an appellate lawyer, I'm a trial lawyer, and so this is a new experience and I appreciate your patience. But in the experience I've had over the years, and I've had a lot of cases involving transfers of critically ill patients and children, and the way that that mechanism typically is enacted is exactly as it was in this case, where sometimes a critical access facility that's only staffed by mid-level providers, and that's no disrespect to those people providing good service, reaches out to a higher level of care in Montana. And oftentimes, because we don't have that many level even two, and we're just getting our first level one trauma center, we don't have that many centers with that many beds. And so frequently, if they can't do a transfer in Montana, they seek out-of-state assistance to Spokane, Seattle, Salt Lake City, Denver, sometimes even L.A. and Minnesota. And I'm not aware of any attempt by Providence or, frankly, any of the receiving centers, which are oftentimes university-affiliated centers, of any attempts to have a referral pattern built, unlike some of the cases that were cited in Mr. Tackett's brief. There was no attempt, certainly by Dr. Shaguner, who had never had any contact with any patients in Montana, but equally certain by Providence to advertise, to seek, to solicit. It just simply is not the case, and there's no evidence to the contrary. We believe that Mr. Tackett failed to meet his burden of establishing a prima facie evidence that personal jurisdiction exists, and as such, the district court's conclusion that it lacked personal jurisdiction over Dr. Shaguner in Providence, Washington, was correct. I don't know if this court would like me to address EMTALA. I didn't hear it raised, but it's our belief, and we're not arguing affirmatively that this falls under EMTALA, but it's our belief that the relationship here existed as a result of contact for emergency services  and the belief of an obligation to provide care and services to a patient in need when such services were not available at a closer location. It's undisputed in this case that transfer was requested by Cabinet Peaks, and it's equally undisputed that Providence played no part in arranging anything until after it was contacted to provide the services needed. If I may, I would talk just a little bit about transfer because I realize that my time is waning. In terms of the transfer issue, it's our belief that 1631 controls the transfer issue raised on appeal. This action was non-transferable, and 1631 neither mandates transfer nor consideration of transfer of a non-transferable action. We believe that this section controls the transfer issue raised by Mr. Tackett's appeal, and under the circumstances of this case, 1631 is the proper statute that controls and applies. And Mr. Tackett concedes whether 1406 can or should also be applied is an academic issue. He concedes there's a strong argument that 1631 rather than 1406 should control issues like the present. He acknowledges that this court has stated 1631 controls the transfer issue where there's a want of jurisdiction, and he specifically alleged venue was proper in the District Court of Montana, and no party has ever argued otherwise. Even with further analysis, these concessions, the acknowledgement, and the allegations are dispositive of the point that 1631 controls the issue at hand. There was mention of the Goldlar case, and the Goldlar case was, to my recollection, ruled upon before Section 1631 came into existence. And we believe that 1631 was the legislative attempt to, if you will, drill down and add more specificity to a situation that was otherwise somewhat confusing. We believe that this circuit has indicated on more than one occasion that 1631 controls transfer when the issues concern a want of jurisdiction. In Cruz Aguilera v. INS, there was no reference to 1404 or 1406, and this court held the transfer is civil actions among federal courts to cure jurisdictional deficits. He's governed by 1631, and this court held similarly in other cases. We believe what's important is that while 1631 controls transfer until a case is transferable, and this case would not have been transferable as a whole, that a district court is not required or mandated to show that it's considered separating a case into component parts in order to consider transfer. And the language, as I stated earlier, from the cases that are contained within our brief shows that if a court takes it upon itself to engage in severance of those discrete parts, that it's permissive as to whether they want to transfer. But it's not obligated, and it's not mandated. Time went much quicker than I expected it would. If there are questions, I'd be happy to do my best, but we very much appreciate the opportunity to be here, and we very much appreciate all of your considerations. Thank you so much for the opportunity to present today. Thank you. Your Honors, my name is Eli Anabnit, and we had initially indicated that we would only be here to answer questions if they were raised. But if it's all right with the court, I would like to just briefly address the response to Judge Cain's question to Mr. Tackett's attorneys. That's fine. All right. Thank you. And again, my name is Eli Anabnit, and for the sake of efficiency, I'm here to answer questions on behalf of both Cabinet Peaks defendants, that would be Cabinet Peaks Medical Center, Dr. Jay Maloney, and Dr. Mark Harding, as well as Logan Health providers, that'd be Logan Health, Dr. Highfill, and Nurse Allen. I just want to take issue with the assertion that the basis upon which the district court declined to exercise supplemental jurisdiction in this case was because it had dismissed all other claims. I think that is a gloss over the nuance that it had actually dismissed all of the claims over which it had original jurisdiction, which is the predicate for exercising the discretion under 1367C3. The claims that remain do not provide the court with original jurisdiction. They would be diversity claims against Providence providers based on Washington law, and they'd be presented alongside non-diverse defendants, which are the Logan Health providers and Cabinet Peaks providers. There is no original jurisdiction in that case. So the basis for the dismissal and exercise of that jurisdiction remains and has not been challenged, owing to the fact that Mr. Tackett raised no arguments in relation to the dismissal of the 1983 claims, or the RICO claims, or any other claim over which the court originally was provided subject matter jurisdiction. And there's no allegation that this was an abuse of discretion. It was just simply a request. And that is all I have. Thank you for allowing me to briefly address that, unless there are any other questions. Great. Thank you. Two brief points on rebuttal, Your Honor. First, on transfer, and second, on the chilling effects argument. There's two reasons why severance is not an issue here. First, several circuits, including the Third, Tenth, and Federal, have found that using Rule 21 severance to slice some claims off of a larger action does create a new action that can be transferred. So that is one option for this Court to pursue. And second, in this case specifically, all of the other claims had already been dismissed, so there was really no need for the Court to use Rule 21. It was simply dismissing what was remaining or, excuse me, transferring what was remaining or would transfer what's remaining to Washington. Goldlauer may have been a 1406 case before the Supreme Court. However, the interest of justice analysis is the same between 1406 and 1631. And what's important there and what the Court stressed in Goldlauer is that these any justice defeating or time-consuming technicalities are what these interest of justice transfers are supposed to avoid. And forcing Mr. Tackett to refile his claims simply because the Court didn't consider a transfer is just such a time-consuming and justice-defeating technicality. I'd also point the Court to an earlier precedent from this Court, Anrig v. Ringsby United, in which case it remanded a failure to consider severance and transfer of some claims in a larger action because the Court did not expressly consider on the record severance and transfer. Did the plaintiff expressly ask for severance before the district court? No, did not explicitly request severance, but did request a transfer. This is the defendants who did wish to be transferred. And I see I'm out of time. Thank you, Your Honors. Thank you to both sides for the helpful argument. And Mr. Goodman, I know you're law students. Thank you for the excellent job by you and your team, Mr. Soled and Ms. Sparrow, for supervising them on this pro bono project. The case has been submitted.
judges: LEE, BRESS, Kane